**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

| | |
|---|---|
| RICHARD AMENINHAT P. PARKS,<br><br>   Plaintiff,<br><br>   v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE,<br>UNITED STATES CENSUS BUREAU,<br>WILBUR L. ROSS, JR.,<br>*in his official capacity as Secretary of Commerce*,<br>KAREN DUNN KELLEY,<br>*in her official capacity as the Undersecretary for Economic Affairs, performing the nonexclusive duties of the Deputy Secretary of Commerce*,<br>STEVEN DILLINGHAM,<br>*in his official capacity as an employee of the U.S. Census Bureau performing the non-exclusive functions and duties of the U.S. Census Bureau*, and<br>RON JARMIN,<br>*in his official capacity as an employee of the U.S. Census Bureau performing the non-exclusive duties and functions of the Deputy Director and Chief Operating Officer of the U.S. Census Bureau*,<br><br>   Defendants. | Civil Action No. TDC-19-0642 |

**MEMORANDUM OPINION**

Plaintiff Richard Ameninhat Parks, who is self-represented, has filed a civil action against the United States Department of Commerce, the United States Census Bureau, the Secretary of

Commerce, and other Department of Commerce officials (collectively "the Government"),[1] alleging that the inclusion of a question about the race of respondents in the 2020 Census is barred by both the United States Constitution and federal law. Presently pending before the Court is the Government's Motion to Dismiss. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

### I. Constitutional and Statutory Framework

The United States Constitution requires that the population of the nation be counted every ten years. U.S. Const. art. I, § 2, cl. 3. Responsibility for this colossal undertaking rests in the first instance with Congress, *id.*, which has delegated this duty to the Secretary of Commerce ("the Secretary"), 13 U.S.C. § 141(a) (2018), who is assisted by the United States Census Bureau ("the Census Bureau"), *id.* §§ 2, 21. Although the Constitution provides for the enumeration of all persons in the United States as a means of apportioning congressional representatives on the basis of population, U.S. Const. art. I, § 2, cl. 3, many states, including Maryland, also use census data to draw state legislative districts. *See* Md. Const. art. III, § 5; *see also, e.g.*, Texas Const. art. 3, § 26. In addition to its use in drawing electoral districts, census data is also used "to allocate federal funds to the States." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2561 (2019).

The Census collects more data than just the number of individuals in the United States. Congress has explicitly authorized the Secretary to use the enumeration process to "obtain such

---

[1] In his Amended Complaint, Parks notes that original Defendant John H. Thompson, Director of the U.S. Census Bureau, is "replaced." Am. Compl. at 2, ECF No. 13. Thompson will therefore be dismissed as a Defendant. Parks also adds as a Defendant the United States Census Bureau. The Clerk shall amend the docket to include the United States Census Bureau as a Defendant.

other census information as necessary." 13 U.S.C. § 141(a).  A substantial portion of this "other census information" is "demographic information, which 'is used for such varied purposes as computing federal grant-in-aid benefits, drafting of legislation, urban and regional planning, business planning, and academic and social studies.'" *New York*, 139 S. Ct. at 2561 (quoting *Baldrige v. Shapiro*, 455 U.S. 345, 353 n.9 (1982)).

Among the demographic data collected through the Census is the race of persons in the United States.  This data is particularly important for the enforcement of the Voting Rights Act of 1965 ("VRA"), 52 U.S.C. §§ 10301–10702 (2018), and voting rights litigation more generally. *See, e.g.*, *Bush v. Vera*, 517 U.S. 952, 983 (1996) (plurality) (relying on census data in assessing whether a redistricting plan could be justified as necessary under the VRA); *Valdespino v. Alamo Heights Indep. Sch. Dist.*, 168 F.3d 848, 853-54 (5th Cir. 1999) (noting in a VRA case that census data on race is presumptively valid and reliable); *United States v. City of Eastpointe*, 378 F. Supp. 3d 589, 602-04 (E.D. Mich. 2019) (relying on an expert interpretation of census data on race in adjudicating a VRA claim).  The 2020 Census form, which Parks attached as an exhibit to his Amended Complaint, asks the question, "What is this person's race?"  Census Form, Am. Compl. Ex. 1, ECF No. 13-1.  The options for responses include "White," "Black or African Am.," "American Indian or Alaska Native," 11 different categories for individuals of Asian or Pacific Islander descent, and "Some other race." *Id.*

## II.     Parks's Allegations

Parks, who describes himself as having African ancestry, resides in Wheaton, Maryland and receives federal social security disability benefits and financial assistance from Montgomery County, Maryland.  In his Amended Complaint, he states that he is not "a believer or practitioner of race/races/racism," traces the problematic use of various racial terms throughout American

history, and argues that the use of the term "black" is offensive and "derogatory." Am. Compl. at 15, 29, ECF No. 13. The Census Bureau, he alleges, has ignored the problems with using this term. Parks asserts that asking respondents about race in the 2020 Census and, more specifically, using the term "black," will cause an undercount of African Americans. Parks contends that the result of such an undercount would be to "dilute his vote by overpopulating his congressional and legislative districts," and to "reduce federal funding to his localities, including for programs on which he directly relies." *Id.* at 34.

Parks filed this action in the Circuit Court for Montgomery County, Maryland. After the Government removed the case to this Court, Parks filed an Amended Complaint. Construed liberally, the Amended Complaint asserts that including a question in the 2020 Census on race generally, and with the use of the term "black" specifically, violates the Enumeration Clause of the United States Constitution, U.S. Const. art. I, § 2, cl. 3, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–559, 701–706 (2018).

## DISCUSSION

In its Motion, the Government seeks dismissal of this case under Federal Rule of Civil Procedure 12(b)(1) on the grounds that Parks lacks standing to raise his challenge to the inclusion of a question regarding race and the use of the term "black" in the 2020 Census, and under Rule 12(b)(6) on the grounds that Parks's Enumeration Clause and APA claims each fail to state a plausible claim for relief. As the Court finds the Government's standing argument dispositive, it need not address the Government's merits arguments.

**I.      Legal Standards**

Article III of the Constitution limits the federal judicial power to resolving "Cases" or "Controversies." U.S. Const. art. III § 2; *Ansley v. Warren*, 861 F.3d 512, 517 (4th Cir. 2017).

Accordingly, whether a plaintiff has identified an actual case or controversy, and thus has standing to advance that case, is a question of subject matter jurisdiction. *South Carolina v. United States*, 912 F.3d 720, 726 (4th Cir. 2019). Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal when it believes that the plaintiff has failed to establish subject matter jurisdiction. The plaintiff has the burden to show that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). When a defendant asserts that the plaintiff has failed to allege facts sufficient to establish subject matter jurisdiction, the allegations in the complaint are assumed to be true under the same standard as in a Rule 12(b)(6) motion, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). When a defendant asserts that facts outside of the complaint deprive the court of jurisdiction, the Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *Kerns*, 585 F.3d at 192. The court should grant a Rule 12(b)(1) motion based on a factual challenge to subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

**II.     Standing**

Defendants argue that the Court should dismiss the Amended Complaint because Parks lacks standing to assert his claims. An "essential element" of the Constitution's limitation on the power of the federal courts is "that any party who invokes the court's authority must establish standing." *Ansley*, 861 F.3d at 517. "[I]t is not enough that the party invoking the power of the court have a keen interest in the issue." *Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013).

5

Establishing standing requires the plaintiff to show (1) an "injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) that a favorable decision will likely redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, the Government argues that Parks has failed to meet all three of these requirements. Because injury in fact is "the '[f]irst and foremost' element of Article III standing," the Court begins there. *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252 (4th Cir. 2020) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)).

In order to establish an injury in fact, a plaintiff must show an "invasion of a legally protected interest" that is both (1) "concrete and particularized," and (2) "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations omitted). A future injury "may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *New York*, 139 S. Ct. 2565 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Here, Parks alleges that he will be harmed by an undercount because it will "dilute his vote by overpopulating his congressional and legislative districts," and "reduce federal funding to his localities, including programs on which he directly relies." Am. Compl. at 34-35. The Government does not contest that such injuries would be sufficiently concrete for standing purposes. Indeed, in *New York*, the United States Supreme Court recently held, in a challenge to the inclusion of a question on the 2020 Census asking for the citizenship of respondents as likely to result in an undercount, that plaintiffs' allegation that such an undercount would result in the loss of federal funds to their states and localities "is a sufficiently concrete . . . injury to satisfy Article III." 139 S. Ct. at 2565; *see Carey v. Klutznick*, 637 F.2d 834, 838 (2d Cir. 1980) (holding that individual plaintiffs asserting that a census undercount will result in decreased federal funds for their city and state had established standing); *Kravitz v. U.S. Dep't of Commerce*, 336 F. Supp.

3d 545, 558 (D. Md. 2018) ("*Kravitz I*").  Likewise, the Supreme Court has held that the harm of vote dilution arising from the expected loss of a congressional seat in a plaintiff's state as a result of a census undercount is a sufficiently concrete injury for standing purposes. *Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 331-32 (1999) (holding that individual citizens had standing based on such a claim); *see Carey*, 637 F.2d at 838; *Kravitz I*, 336 F. Supp. 3d at 557-58.  The Court likewise finds that the types of injuries identified by Parks are sufficiently concrete.

However, the Government argues that Parks does not plausibly allege that the inclusion of a race question on the 2020 Census will likely cause him to suffer one of these forms of injury, because he has failed to allege facts supporting the conclusion that the race question leads to an undercount of African Americans in his community or elsewhere.  The Amended Complaint substantially relies on the premise, discussed in recent cases culminating in the Supreme Court's decision in *New York*, that the inclusion of a citizenship question on the Census is likely to result in an undercount of certain demographic groups.  *See New York*, 139 S. Ct. at 2565 (holding that the plaintiffs had standing to challenge the inclusion of the citizenship question based in part on the Census Bureau's own conclusion that it would discourage noncitizens to respond to the Census and thus result in an undercount); *Kravitz I*, 336 F. Supp. 3d at 558-59.  Indeed, substantial portions of the Amended Complaint are copied verbatim from the amended complaint in *Kravitz v. United States Department of Commerce*, No. GJH-18-1041 (D. Md. 2018), a case in this District addressing substantially similar claims as those addressed by the Supreme Court in *New York*, in which the court held that the inclusion of a citizenship question on the 2020 Census violated the Enumeration Clause and was arbitrary, capricious, and based on a pretextual rationale, in violation of the APA.  *Kravitz v. United States Dep't of Commerce*, 366 F. Supp. 3d 681, 743-44, 749-51,

752 (D. Md. 2019). However, both the allegations and evidence in such cases included factual support for the plaintiffs' allegations that the inclusion of a citizenship question would result in an undercount. In the complaint in *Kravitz*, for example, the plaintiffs both articulated a clear theory of how the inclusion of a citizenship question would decrease the response rate among certain populations and identified specific facts supporting this theory. As to the theory, they explained that asking about a sensitive topic such as citizenship status would increase confidentiality concerns and fears of triggering immigration enforcement actions that would cause some noncitizens to decline to respond to the Census entirely. *See* Am. Compl. ¶¶ 106-09, *Kravitz v. U.S. Dep't of Commerce*, No. GJH-18-1041 (D. Md. 2018) (ECF No. 17). As to the supporting facts, the plaintiffs cited to comparisons of response rates to the 2000 Census short form, which did not ask about citizenship status, and the long form, which did ask about citizenship, reflecting that noncitizens' response rate on the long form was disproportionately lower than the response rate for citizens. They noted that on the monthly American Community Survey, also administered by the Census Bureau, Hispanics responded to questions about citizenship at a disproportionately lower rate. They identified Census Bureau survey data reflecting that noncitizens and Hispanics had concerns about the confidentiality of the census response data and feared immigration enforcement. The plaintiffs also referenced congressional testimony by a Census Bureau official acknowledging that the inclusion of a citizenship question would cause a decrease in participation among some groups, including immigrant and Hispanic populations.

Here, by contrast, Parks provides no coherent theory or supporting facts for his claim that a question about race, particularly one using the term "black," will "lead to a disproportionate under or over count" consisting of an average of a "4% undercount for 'blacks' and 1% over count for 'whites' totaled since 1950." Am. Compl. at 2. He vaguely alleges that "Bureau personnel

have repeatedly found that such a question . . . [would] caus[e] disproportionate levels of non-participation among certain demographic groups," but he identifies no Census Bureau studies reaching this conclusion. *Id.* at 3. Indeed, this sentence is copied directly from the *Kravitz* complaint, which was referring to the Census Bureau's prior research on the inclusion of a *citizenship* question, not a question about race. *Compare id. with Kravitz* Am. Compl. ¶ 5. Likewise, Parks also alleges that:

> As the Bureau's own prior research and investigation demonstrate, Defendants' arbitrary use of race in the 2020 Census will increase fear and distrust, depress response rates, and produce a disproportionate undercount of residents in states and localities with high numbers of certain demographic groups, including noncitizens, immigrants, non-English speakers, and individuals of Hispanic origin.

Am. Compl. at 4. Again, this passage is lifted almost verbatim from the *Kravitz* complaint, which was referring to the Census Bureau's research on the inclusion of a citizenship question, except that the original reference to citizenship has been replaced by a reference to race. *Compare id. with Kravitz* Am. Compl. ¶ 10. Parks provides no justification for such misleading substitutions and has provided no factual basis to support the claim that the statements relating to the citizenship question are equally applicable to the race question.

Beyond these statements, Parks has not offered facts that support the claim that the inclusion of a race question, or the use of the term "black," would lead to an undercount. Although Parks has identified a media report stating that African Americans have been undercounted in past censuses and likely will be undercounted by four percent in 2020, he does not claim that the source attributes the undercount to the presence of a race question or the use of the term "black" on census forms. Am. Comp. at 31. Indeed, while the fact that African Americans are undercounted in the Census is well-documented, this result has typically been attributed to difficulties in counting disadvantaged individuals, a group that reportedly overlaps with African Americans to a significant degree. *See, e.g.*, *Young v. Klutznick*, 652 F.2d 617, 623 (6th Cir. 1981).

Parks identifies no survey data, statements by Census Bureau officials, or even anecdotal evidence to support his claim that the undercount is caused by the use of a race question or the term "black" on the 2020 Census. The only person he cites as having "similar concerns" about the terms used to describe African Americans, an unnamed Nigerian woman he met, told him that she "doesn't let it ruin her day," and did not state that the use of that term would cause her not to respond to the Census. Am. Compl. at 29-30. Finally, Parks's reference to the successful efforts by U.S. Representative Grace Meng to secure the passage of legislation to remove the term "Oriental" from the lexicon of federal law does not advance his position. Am. Compl. at 18. There is no allegation that Congresswoman Meng or anyone else has asserted, much less concluded, that the use of the term in various federal government materials resulted in an undercount of Asian Americans in the census. Where, even construing the Complaint generously, Parks has provided no factual support for his conclusory allegation that the race question or the use of the term "black" on the 2020 Census will result in an undercount of African Americans, the Court finds that he has not plausibly alleged an injury in fact for standing purposes. Accordingly, the Court need not address the remaining prongs of the standing analysis and will dismiss this case for lack of standing.

In so ruling, the Court does not accept the Government's argument that Parks has failed to establish standing because he has not cited specific statistical data showing that his community has a higher proportion of African American residents and so will be more affected by an undercount of African Americans than other communities. Such a hypertechnical argument slices the Amended Complaint's allegations too finely and ignores the Court's obligation to construe the pleadings of self-represented litigants liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Nor does the Court's ruling signal that future plaintiffs raising challenges to the

adoption of census questions or similar governmental actions necessarily must include in their complaints specific evidence of the likelihood of an undercount as detailed and empirically grounded as the facts asserted in *Kravitz*. But a complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 623 (4th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Here, Parks has failed to include any persuasive facts in support of his claim that the race question on the 2020 Census will result in an undercount, a necessary predicate to his claim that he will likely be injured by the inclusion of that question. The Court will therefore grant the Government's Motion.

## CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss will be GRANTED. A separate Order shall issue.

Date: April 24, 2020

/s/ *Theodore D. Chuang*
THEODORE D. CHUANG
United States District Judge